Rebecca J. Roe
Adam J. Berger
Schroeter, Goldmark & Bender
810 3rd Ave., Suite 500
Seattle, WA 98104
206-622-8000
roe@sgb-law.com
berger@sgb-law.com

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **Willetha Allison, Aleshia Anderson, Rashaad Daniels, Lamount Evans, Shawn Mayer, Kion McLemore, and Raymond McNally,** on behalf of themselves and all others similarly situated, | No. |
| Plaintiffs, | **COMPLAINT—CLASS ACTION AND FLSA COLLECTIVE ACTION** |
| v. | **\*\*JURY TRIAL DEMAND** |
| **Amazon.com, Inc., Integrity Staffing Solutions, Inc., and DOES 1-50, jointly and severally,** | |
| Defendants. | |

## INTRODUCTION

1.      This is a class and collective action brought by Plaintiffs Willetha Allison, Aleshia Anderson, Rashaad Daniels, Lamount Evans, Shawn Mayer, Kion McLemore, and Raymond McNally ("Plaintiffs"), on behalf of themselves and all similarly situated current and former warehouse workers of Amazon.com, Inc., Integrity Staffing Solutions, Inc., and/or DOES 1-50 (collectively, the "Defendants"), jointly and severally, to recover for Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and attendant state laws.

COMPLAINT – 1

2.     Plaintiffs, and those similarly situated, were subjected to Defendants' policy and practice of failing to pay overtime at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) hours during a workweek.

3.     Specifically, Plaintiffs complain that Defendants violated the FLSA and attendant state laws by requiring their hourly warehouse workers to pass through a security checkpoint at the end of each shift, for which they were not compensated.  Plaintiffs bring this action as a nation-wide collective action pursuant to 29 U.S.C. § 216(b).

4.     The individuals Plaintiffs seek to represent in this action include current and former hourly warehouse workers who worked for Amazon.com, Inc. and/or Integrity Staffing Solutions, Inc. at any time in the past three years.   Plaintiffs contend that Defendants' improper timekeeping and pay policies and practices resulted in the failure to properly compensate their hourly warehouse workers with overtime pay as required under applicable federal law.

5.     Plaintiffs seek a declaration that their rights, and the rights of other Class members, were violated, an award of unpaid wages, an award of liquidated damages, and an award of attorneys' fees and costs to make them whole for damages suffered.

**JURISDICTION AND VENUE**

6.     This Court has subject-matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

7.     This Court has jurisdiction over this FLSA Collective Action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

8.     Defendants' annual sales each exceed $500,000 and each employs more than two persons, so the FLSA applies in this case on an enterprise basis.  Defendants' employees engage in interstate commerce and therefore they are also covered by the FLSA on an

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1    individual basis.

2    9.    This Court has jurisdiction over Plaintiffs' state law class claims pursuant to

3    the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the

4    individual Class members exceed the sum value of $5,000,000 exclusive of interest and

5    costs, there are believed to be in excess of 100 Class members, and this is a case in which

6    more than two-thirds of the proposed Class members and Defendants are citizens of

7    different states.

8    10.    The Court has supplemental jurisdiction over the various state law wage and

9    hour classes pursuant to 28 U.S.C. § 1367 because the facts supporting Plaintiffs' FLSA

10   claims are derived from a common nucleus of fact that support the various state wage and

11   hour claims such that they should be adjudicated in one judicial proceeding. *United Mine*

12   *Workers v. Gibbs*, 383 U.S. 715 (1966).

13   11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the

14   actions and omissions giving rise to the claims pled in this Complaint substantially occurred

15   in this District.

16   ### **PARTIES**

17   12.    Plaintiff, Willetha Allison, is an individual who resides in Indianapolis,

18   Indiana.  Ms. Allison worked for Integrity Staffing Solutions, Inc. from October 2010 until

19   March 2011 as a Stower at Amazon.com's Whitestown, Indiana, warehouse.  In March 2011,

20   Ms. Allison was hired directly into Amazon.com as a Stower and currently holds that

21   position.  Ms. Allison has executed her consent to sue form, attached as Exhibit A.

22   13.    Plaintiff, Aleshia Anderson, is an individual who resides in Richmond,

23   Virginia.  Ms. Anderson worked from October 10, 2012, until January 5, 2013, and again

24   from February 20, 2013, until the present day as a Picker at Amazon.com's Dinwiddie,

25   Virginia, warehouse.   Ms. Anderson has executed her consent to sue form, attached as

26   Exhibit B.

COMPLAINT – 3

14.     Plaintiff, Rashaad Daniels, is an individual who resides in Indianapolis, Indiana.  Mr. Daniels worked for Integrity Staffing Solutions, Inc. from May 2009 until August 2011 as a Picker at Amazon.com's Whitestown, Indiana, warehouse.  Mr. Daniels has executed his consent to sue form, attached as Exhibit C.

15.     Plaintiff, Lamount Evans, is an individual who resides in Petersburg, Virginia.  Mr. Evans worked from October 2012 until December 2012 as a Picker at Amazon.com's Chester, Virginia, warehouse.  Mr. Evans has executed his consent to sue form, attached as Exhibit D.

16.     Plaintiff, Shawn Mayer, is an individual who resides in Goodyear, Arizona.  Mr. Mayer worked from August 2012 until January 2013 as a Picker at Amazon.com's Goodyear and Phoenix, Arizona, warehouses.  Mr. Mayer has executed his consent to sue form, attached as Exhibit E.

17.     Plaintiff, Kion McLemore, is an individual who resides in Buckeye, Arizona.  Mr. McLemore worked from October 2011 until December 2011 as a Picker at Amazon.com's Phoenix, Arizona, warehouse.  Mr. McLemore has executed his consent to sue form, attached as Exhibit F.

18.     Plaintiff, Raymond McNally, is an individual who resides in San Bernardino, California.  Mr. McNally worked from October 2012 until January 2013 as a Packer at Amazon.com's San Bernardino, California, warehouse.  Mr. McNally has executed his consent to sue form, attached as Exhibit F.

19.     Defendant, Amazon.com, Inc. ("Amazon.com"), was founded in 1994 and is headquartered in Seattle, Washington.  Currently, Amazon.com is a Fortune 100 company.[1]

20.     According to its website, Amazon.com's mission is "to be Earth's most customer-centric company, where customers can find and discover anything they might want

---

[1] See http://www.amazon.com/b?_ref=career_AA&node=239364011 (last visited Sept. 4, 2013).

to buy online, and endeavors to offer its customers the lowest possible prices." Amazon.com and its affiliated sellers offer millions of unique, new, refurbished, and used items in categories such as books, movies, music and games, digital downloads, electronics and computers, home and garden, toys, kids and baby goods, grocery, apparel, shoes and jewelry, health and beauty, sports and outdoor, and tools, auto, and industrial products.[2]

21.     Defendant, Integrity Staffing Solutions, Inc. ("Integrity"), was founded in 1997 and is headquartered in Wilmington, Delaware.  Integrity services thousands of clients in Arizona, Connecticut, Delaware, Florida, Kentucky, Maryland, New York, Nevada, New Jersey, Ohio, and Pennsylvania.[3]

22.     Integrity offers a number of services to its clients, including leasing warehouse and other hourly employees to customers like Amazon.com at warehouse facilities throughout the United States: "Each year, Integrity places thousands of people just like you in seasonal jobs at Amazon fulfillment centers across the country."[4]

23.     The DOE Defendants in this matter are the entities and/or individuals that, together with the named Defendants, employed Plaintiffs and members of the putative Class and are thus jointly and severely liable for the violations of the FLSA and possibly for violating other state wage and hour laws.  Plaintiffs will seek leave from this Court to amend this Complaint to include those entities should the factual record support doing so.

24.     At all relevant times, Defendants were Plaintiffs' "employer," and the companies were engaged in "interstate commerce" as defined in the FLSA.

25.     Upon information and belief, Defendants share a joint employment relationship in connection with Plaintiffs and the putative Class members.

---

[2] *Id.*

[3] See http://www.integritystaffing.com/aboutus/index.aspx (last visited Sept. 4, 2013).

[4] See http://jobs.integritystaffing.com/go/Integrity@Amazon-Jobs/295839/?utm_source=careersite (last visited Sept. 4, 2013).

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

## COMMON ALLEGATIONS

26.     Amazon.com is in the business of selling various goods to consumers around the world by way of the internet.   In order to meet its substantial sales demands, Amazon.com keeps its inventory in enormous fulfillment centers (i.e., warehouses) in at least 14 states, including: Arizona, California, Delaware, Indiana, Kansas, Kentucky, Nevada, New Hampshire, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and Washington.[5]

27.     Integrity is in the business of providing labor services to other companies and businesses throughout the United States, which includes providing the staffing for warehouses owned and/or operated by Amazon.com nationwide.

28.     Integrity is the direct employer of many Plaintiffs, and exercises direct control over the hours and wages of Plaintiffs and all similarly-situated hourly shift employees at all of Amazon.com's warehouse locations nationwide.   Upon information and belief, Integrity employs thousands of hourly warehouse workers like Plaintiffs at each of the warehouse operations who are subject to the same security clearance policies complained of herein.

29.     Defendants maintained, enforced, and implemented a Security Clearance policy for all hourly warehouse workers who worked at Amazon.com warehouse locations throughout the United States.

30.     Plaintiffs were required to undergo a daily security clearance at the end of each shift.   Plaintiffs were not compensated for the time spent undergoing the security clearance before they were released from work and permitted to leave the warehouse facility. Defendants' policy of requiring hourly warehouse employees to undergo a thorough security clearance before being released from work and permitted to leave the facility was solely for the benefit of the employers and their customers and was integral and indispensable to the Plaintiffs' principal activities.

---

[5] See http://www.amazon.com/Locations-Careers/b?ie=UTF8&node=239366011 (last visited Sept. 4, 2013).

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

31.     Amazon.com's warehouse facilities are enormous in that each covers approximately seven football fields in total area.

32.     As warehouse employees, Plaintiffs fulfilled orders made by Amazon.com customers.  Plaintiffs walked throughout their respective warehouse facilities with collection carts and retrieved products from the shelves and directed the products for distribution to customers.  Given the size of the warehouses, Plaintiffs walked a significant distance every day and spent a significant amount of time walking from one end of the facility to another.

33.     Pursuant to Defendants' policies and practices, Plaintiffs and all other similarly-situated warehouse workers were required to go through a security search before leaving the facilities at the end of the day.  The search was meant to prevent employee theft, and it is an integral and indispensable part of the principal activities of a warehouse worker that they not take items from the warehouse out of the warehouse other than in the way proscribed by Defendants.  In fact, not contributing to "shrinkage" and abiding by company procedures for inventory control is an integral and indispensable aspect of Plaintiffs' job and is done for the benefit of Defendants.

34.     At the end of their respective shifts hundreds of warehouse employees would walk to the timekeeping system to clock out and were then required to wait in line to be searched for possible warehouse items taken without permission and/or other contraband.  Thus, at the direction and control of Defendants, and solely for the benefit of the Defendants and/or their customers, Plaintiffs and all other similarly-situated warehouse workers were required to wait approximately 25 minutes each day at the end of each shift without any compensation in order to undergo a search for possible contraband or pilferage of inventory.

35.     Defendants forced Plaintiffs and all other similarly-situated warehouse workers to undergo an intense security clearance: warehouse workers were required to remove all personal belongings like wallets, keys, and belts and would then pass through metal detectors before being released from work and permitted to leave the facility.  In

COMPLAINT – 7

1   addition, warehouse workers were unable to engage in any personal activities during the

2   wait. In fact, Defendants' policies and practices required warehouse employees to leave their

3   personal belongings such as cell phones in their vehicles.

4        36.    Recently, in *Busk v. Integrity Staffing Solutions, Inc.*, the U.S. Court of

5   Appeals for the Ninth Circuit held Plaintiffs' FLSA claims for unpaid time spent performing

6   the same security clearance, before they were released from work and permitted to leave the

7   warehouse facility, were plausible and sufficient to withstand a motion to dismiss under Fed.

8   R. Civ. P. 12(b)(6):

9           Here, [plaintiffs] have alleged that Integrity requires the security screenings,
    which must be conducted at work. They also allege that the screenings are

10          intended to prevent employee theft — a plausible allegation since the
    employees apparently pass through the clearances only on their way out of

11          work, not when they enter. As alleged, the security clearances are necessary to
    employees' primary work as warehouse employees and done for Integrity's

12          benefit. Assuming, as we must, that these allegations are true, the plaintiffs

13          have stated a plausible claim for relief.

14  *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 530-31 (9th Cir. 2013).

15       37.    Defendants did not pay any of their hourly warehouse workers any

16  compensation for the time spent waiting for and undergoing these daily security clearances.

17       38.    Defendants did not compensate any of their hourly warehouse workers at a

18  rate equal to or greater than one and one-half their regular hourly rate of pay whenever they

19  required, suffered, or permitted the warehouse workers to work more than 40 hours per week.

20       39.    Such knowing and willful disregard of the law by one of the nation's leading

21  staffing companies and one of the nation's leading retail giants can no longer be

22  countenanced.

23       40.    Plaintiffs bring their claims as a "hybrid action" under federal and state law.

24  "Although some district courts have held that a FLSA collective action cannot be brought in

25  the same lawsuit as a state-law class action based on the same underlying allegations, all

26  circuit courts to consider the issue have held that the different opting mechanisms do not

COMPLAINT – 8

SCHROETER GOLDMARK *&* BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

require dismissal of the state claims." *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 528 (9th Cir. 2013); *see also Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010).

## COLLECTIVE ACTION ALLEGATIONS

41.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of all similarly situated current and former hourly warehouse workers who worked at Amazon.com's fulfillment centers (warehouses) any time in the past three years (the "Class").

42.     Excluded from the Class are all of Defendants' executives, administrative, and professional employees, including computer professionals and outside sales persons.

43.     With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the workers described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).  The class of workers on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they worked in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, and compensation scheme; and (c) their claims are based upon the same factual and legal theories.

44.     The working relationship between Defendants and every Class member is exactly the same and differs only by name, location, and rate of pay.  The key issue— whether Defendants' security clearance policy and compensation scheme comply with the FLSA—does not vary substantially from Class member to Class member.

45.     The key legal issues are also the same for every Class member, *to wit*: (1) whether the hourly warehouse workers' time spent in security "bag check" lines is compensable; (2) whether Defendants are complying with the federal and state overtime laws; and (3) whether Defendants' unlawful pay practices were willful.

46.     Plaintiffs estimate that the Class, including both current and former employees

SCHROETER GOLDMARK *&* BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

over the relevant period, will include several thousand members.  The precise number of Class members should be readily available from a review of Defendants' personnel and payroll records.

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) on their own behalf and on behalf of all similarly situated current and former hourly warehouse workers who were employed by Defendants any time during the relevant time period (the "Class").

48.     The members of the Class are so numerous that joinder of all Class members in this case would be impractical.  Plaintiffs reasonably estimate that there are over 1,000 warehouse worker Class members that reside and work in at least 14 different states.  Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

49.     There is a well-defined community of interest among Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Class.  These common legal and factual questions, include, but are not limited to, the following:

   a.  Whether Defendants breached their contracts with Plaintiffs and the Class by not paying hourly warehouse workers for time spent in security "bag check" lines; and

   b.  For example only, whether Plaintiffs and the Class are owed wages and other penalties (above the federally mandated overtime due under the FLSA) under the wage and hour laws of at least 14 states in which the warehouse workers work, and if so, the appropriate amount thereof.

50.     Plaintiffs' claims are typical of those of the Class in that Plaintiffs and all other Class members suffered damages as a direct and proximate result of Defendants' unlawful policies and compensation scheme.  Plaintiffs' claims arise from the same policies, practices, and courses of conduct as all other Class members' claims and Plaintiffs' legal theories are based on the same legal theories as all other Class members.

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

51.     Plaintiffs will fully and adequately protect the interests of the Class and Plaintiffs have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour and breach of contract class actions.  Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Class.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by Defendants. Prosecution of this case as a class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

53.     This case is manageable as a class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

54.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, __ U.S. __; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

55.     Because Defendants have acted and refused to act on grounds that apply generally to the Class, and declaratory relief is appropriate in this case with respect to the Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

SCHROETER GOLDMARK *&* BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

**Count I**
**(Collective Action)**

**VIOLATION OF THE FAIR LABOR**
**STANDARDS ACT, 29 U.S.C. § 201, *et seq.***

<u>**FAILURE TO PAY OVERTIME**</u>

56.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

57.     At all times relevant to this action, Defendants were an "employer" under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

58.     Defendants are engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

59.     At all times relevant to this action, Plaintiffs were non-exempt "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

60.     Plaintiffs either (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

61.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and all similarly situated current and former warehouse workers to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

62.     At all relevant times, Defendants' policies and practices deprived Plaintiffs and Class members of wages that were owed for work performed during a given continuous workday and workweek.   In workweeks where Plaintiffs and Class members worked 40 hours or more, Defendants' policies and practices also deprived Plaintiffs and the Class of overtime pay at a rate of 1.5 times their regular rates of pay.

63.     At all times relevant to this action, Defendants required Plaintiffs and all similarly situated current and former Class members to perform substantial amounts of off-the-clock work that benefitted Defendants, but Defendants failed to pay these workers the

COMPLAINT – 12

federally mandated overtime compensation for any of these off-the-clock activities.

64.     The hours of off-the-clock work performed by Plaintiffs and similarly situated Class members are an essential part of the hourly workers' jobs and these activities and the time associated with these activities is not *de minimis*.

65.     At all times relevant to this action, Defendants refused to pay Plaintiffs and the Class for time spent in security lines that should have been compensated as part of the hourly employees' workday principal activities.

66.     At all relevant times to this action, Defendants failed to keep accurate records and actively prevented hourly warehouse workers from reporting their actual work hours.

67.     In workweeks where Plaintiffs and other Class members worked 40 hours or more, hourly employees' uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage.  29 U.S.C. § 207.

68.     Plaintiffs and other Class members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

69.     Defendants' violations of the FLSA were knowing and willful.  Defendants knew or could have determined how long it took hourly warehouse workers to complete the security clearances and it could have properly compensated Plaintiffs and the Class for these activities, but they did not.

70.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

SCHROETER GOLDMARK *&* BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

## Count II
### (National Breach of Contract Class Action)

### <u>BREACH OF CONTRACT</u>

71.     Plaintiffs re-allege and incorporate all previous paragraphs herein and further allege as follows.

72.     At all times relevant to this action, Defendants had a contract with Plaintiffs and every other Class member to pay each employee for each and every hour they worked at a pre-established (contractual) regularly hourly rate.

73.     Each Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of its regular business activities.

74.     Upon information and belief, each Class member, including Plaintiffs, has an hourly rate between $10.00 and $15.00 per hour.

75.     Plaintiffs and every other Class member performed under the contract by doing their jobs and carrying out the security clearance activities that Defendants required.

76.     By not paying Plaintiffs and every other Class member the agreed upon hourly wage for the security clearance activities, Defendants systematically breached their contracts with Plaintiffs and each other member of the Class.

77.     Plaintiffs' and Class members' remedies under the FLSA are inadequate in this case because Defendants' warehouse workers are paid more than the federally mandated minimum wage of $7.25 per hour.  Upon information and belief, Class members' contractual rates of pay range from $10.00 to $15.00 per hour.

78.     Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Class members spent performing security clearance activities, which is a fundamental part of an "employer's job."

79.     The contract and contractual obligations in question are not employment contracts in that they do not relate to or guarantee that any services will be performed in the future.

COMPLAINT – 14

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

80.     As a direct and proximate result of Defendants' breaches of the contracts alleged here, Plaintiffs and every other member of the Class has been damaged, in an amount to be determined at trial.

81.     These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

**Count III**
**(Alternative National Breach of Contract Class Action)**

**QUASI-CONTRACTUAL REMEDIES**
**UNJUST ENRICHMENT**

82.     Plaintiffs re-allege and incorporate paragraphs 1-69 herein and further allege as follows.

83.     At all times relevant to this action, Plaintiffs and every other Class member appeared for work and performed services for Defendants that directly benefitted Defendants and their clients and/or customers.

84.     As part of their ongoing working relationships with Defendants, Plaintiffs and other Class members expected to be paid wages for the time they spent waiting in security clearance lines.

85.     By not paying Plaintiffs and the Class for the time they spent performing these necessary activities, Defendants have been unjustly enriched at the expense of Plaintiffs and the Class, in an amount to be determined at trial.

86.     By not paying Plaintiffs and other Class members for the time they spent performing necessary work-related activities, Defendants have also saved themselves thousands of dollars in unpaid payroll taxes—taxes that would have otherwise been credited to Plaintiffs' and Class members' benefit.

87.     It would be unjust and inequitable to allow Defendants to retain the benefit of the work performed by Plaintiffs and the Class without compensation.

SCHROETER GOLDMARK *&* BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

88.    It would be unjust and inequitable to allow Defendants to retain the benefit of the job-related expenses advanced by Plaintiffs and the Class without reimbursement.

89.    These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of unjust enrichment is substantially the same throughout the United States.

### Count IV
### (California Class Action)

### VIOLATION OF THE CALIFORNIA
### LABOR CODE, §§ 510 and 1194

### FAILURE TO PAY OVERTIME

90.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

91.    At all relevant times, in addition to the FLSA, Defendants were required to compensate Plaintiffs and all Class members employed in California at one and one-half times the regular rate of pay for all hours worked in excess of eight (8) hours per day and/or forty (40) hours per week.

92.    At all relevant times, Defendants suffered, permitted, and/or required Plaintiffs and all Class members to work in excess of eight hours per day and/or forty hours per week without being paid overtime as required by California law.

93.    As a result of the unlawful acts of Defendants, Plaintiffs and all Class members employed in California were deprived of their rightfully earned overtime pay in amounts to be determined at trial.

94.    Defendants' conduct violated California Labor Code §§ 510 and 1194. Therefore, pursuant to California Labor Code § 1194 Plaintiffs and all Class members are entitled to recover damages for the nonpayment of overtime for all hours worked in excess of eight (8) hours per day or forty (40) hours per week, interest on that amount pursuant to California Labor Code § 218.6, and reasonable attorneys' fees and litigation costs.

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

95.     None of the provisions of the California Labor Code can be contravened, set aside, abrogated, or waived by Plaintiffs or the Class.

96.     As a result of the foregoing conduct, Plaintiffs seek on behalf of themselves, and all members of the Class employed in California, unpaid overtime wages at the required legal rate of one and one-half times their regular rate of pay during the relevant time period, all other damages, attorneys' fees and costs, restitution, penalties, injunctive relief, interest calculated at the highest legal rate, and all other relief allowed by law.

### Count V
### (California Class Action)

### **VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.***

97.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

98.     Plaintiffs bring this action individually, on behalf of the Class, and on behalf of the general public pursuant to § 17200 *et seq.* of the California Business and Professions Code (the "Cal. Bus. & Prof. Code"), and the Unfair Competition Act (the "UCL").

99.     The Cal. Bus. & Prof. Code § 17204 prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice."   On behalf of the Class, Plaintiffs seek compensation for the loss of their property and the personal financial impacts they have suffered as a result of Defendants' unfair business practices.  Defendants' conduct, as described above, has been and continues to be deleterious to the Class and Plaintiffs are seeking to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5.

100.    The conduct of Defendants, as described above, constituted unlawful, unfair, unconscionable, and/or fraudulent business acts or practices which injured Plaintiffs and the Class members and caused them loss of money.

101.    The unlawful, unfair, unconscionable, and/or fraudulent business acts or practices adopted by Defendants, which injured Plaintiffs and the Class members causing them the loss of money, were conducted by Defendants in material part in the state of

COMPLAINT – 17

SCHROETER GOLDMARK *&* BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

California and emanated to their business operations in other states.   Class members nationwide, therefore, were harmed and injured as a result of Defendants' conduct in California.  As such, the UCL applies to the entire Class's claims.

102.   Defendants adopted unlawful business and employment policies, entered into agreements, and conspired amongst themselves to engage in the above-described unlawful, unfair, unconscionable, and/or fraudulent business acts and practices nationwide, and that conduct harmed Class members and caused them injury and financial loss.  As such, the UCL applies to all such transactions and dealings.  The Plaintiffs, and all members of the Class, have standing to assert UCL claims against Defendants.

103.   Defendants have engaged and continue to engage in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above, inclusive, *to wit*, by: (a) failing to pay to Plaintiffs and the Class their overtime compensation pursuant to California Labor Code §§ 510 and 1194; and (b) failing to pay to Plaintiffs and the Class their overtime compensation pursuant to the FLSA.

104.   By failing to pay its employees overtime in violation of FLSA and the California Labor Code, Defendants violated the UCL.

105.   Violations of the FLSA are unlawful acts which are independently actionable under the UCL.  *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010); *In re Wells Fargo Home Mortgage Litig.*, 527 F. Supp. 2d 1053, 1066-69 (N.D. Cal. 2007).  Such cases are certifiable as nationwide class actions under Fed. R. Civ. P. 23 where the unlawful, unfair, unconscionable, and/or fraudulent business acts or practices which injured Plaintiffs and the Class were conducted by Defendants in material part in the state of California, and emanated to their business operations in other states.  *Id.*

106.   By failing to pay its employees for the time spent in security checkpoints at the end of each shift as described above, Defendants engaged in unlawful, unfair, unconscionable, and/or fraudulent business acts or practices in violation of the UCL.

SCHROETER GOLDMARK *&* BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

107.     By failing to maintain accurate employment records under the FLSA and/or other applicable wage and hour laws, Defendants engaged in unlawful, unfair, unconscionable, and/or fraudulent business acts or practices in violation of the UCL.

108.     The acts complained of herein, and each of them, constitute unfair, unlawful, unconscionable, and/or fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200 *et seq*.  Defendants' acts and practices described herein offend established public policies, including, but not limited to, those set forth in the FLSA and/or other applicable wage and hour laws, and involve business practices that are immoral, unethical, oppressive, and/or unscrupulous.

109.     The unfair business practices set forth above have and continue to injure Plaintiffs, the Class, and the general public and cause injury and the loss of money as described further within.  These violations have unjustly enriched the Defendants at the expense of Plaintiffs and the Class.  As a result, Plaintiffs, the Class, and the general public are entitled to restitution and an injunction.

110.     Plaintiffs seek, on their own behalf, and on behalf of other similarly situated members of the Class, and on behalf of the general public, full restitution of monies as necessary and according to proof that were withheld, acquired, and/or converted by the Defendants by means of the unfair practices complained of herein.

111.     The acts complained of herein occurred within the last four years preceding the filing of the complaint in this action.

112.     Upon information and belief, Plaintiffs allege that at all times herein mentioned Defendants have engaged in unlawful, deceptive, and unfair business practices as proscribed by Cal. Bus. & Prof. Code § 17200 *et seq*., including those set forth herein above thereby depriving Plaintiffs and other members of the Class and general public the minimum working condition standards and conditions due to them under the California laws and Industrial Welfare Commission wage orders as specifically described therein.

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

113.   The conduct of Defendants and their agents, employees, and managerial employees as described herein was oppressive, fraudulent, malicious, and done in conscious disregard of Plaintiffs' and the Class members' rights.

114.   Such a pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation as described herein is unlawful and creates an entitlement to recovery by Plaintiffs in a civil action for the unpaid balance of the full amount of wages owing, including interest thereon, penalties, attorneys' fees, and costs of suit according to the mandate of the California Labor Code.

115.   Such a pattern, practice, and uniform administration of an unlawful, deceptive, and unfair business practice as described herein creates an entitlement to recovery by Plaintiffs and the Class in a civil action for damages and wages owed.

WHEREFORE, Plaintiffs request the following relief:

a.   certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   certifying this action as a class action pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Counts II-V)[6];

c.   ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class of their rights by law to join and participate in this lawsuit;

d.   designating Plaintiffs as the representatives of the Class and undersigned counsel as Class counsel;

e.   declaring that Defendants violated the FLSA;

f.   declaring that Defendants' violation of the FLSA was willful;

g.   granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the Class the full amount of damages and liquidated damages available by law;

---

[6] As noted in Claim III, certification of Claim III is plead in the alternative.

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

h.   awarding reasonable attorney fees and costs incurred by Plaintiffs in filing this action as provided by statute;

i.   awarding pre- and post-judgment interest to Plaintiffs on these damages; and

j.   awarding such other and further relief as this Court deems appropriate.

Dated:  September 6, 2013

SCHROETER, GOLDMARK & BENDER

*Rebecca J. Roe*

_____

Adam J. Berger, WSBA #20714
Rebecca J. Roe, WSBA #7560
810 Third Avenue, Suite 500
Seattle, WA 98104
Telephone: (206) 622-8000
Facsimile: (206) 682-2305
berger@sgb-law.com
roe@sgb-law.com
*Local Counsel for Plaintiffs*

Timothy J. Becker
*(Pending Admission Pro Hac Vice)*
MN Bar No. 256663
Jacob R. Rusch
*(Pending Admission Pro Hac Vice)*
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

Jason J. Thompson
*(Pending Admission Pro Hac Vice)*
MI Bar No. P47184
Jesse L. Young
*(Pending Admission Pro Hac Vice)*
MI Bar No. P72614
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076

COMPLAINT – 21

248-355-0300
jthompson@sommerspc.com
jyoung@sommerspc.com

Steven R. Maher
*(Pending Admission Pro Hac Vice)*
FL Bar No. 887846
THE MAHER LAW FIRM,
A Professional Association
631 W. Morse Blvd., Suite 200
Winter Park, FL 32789
Telephone: (407) 839-0866
Facsimile (407) 425-7958
smaher@maherlawfirm.com

*Trial Counsel for Plaintiffs*

COMPLAINT – 22